[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, 42, and the defendant husband, 45, married on May 26, 1984 in New York City. There is one child of the marriage, Erica Shereen Boyd, born December 28, 1985. The court has jurisdiction based on the continuous residence of the plaintiff in this state for over one year prior to the commencement of this action for dissolution.
The parties first met in 1982. At that time, the plaintiff was employed as a buyer by Saks Fifth Avenue in New York City. The defendant had completed medical school in 1979 and had passed the national board examination in internal medicine. At the time of the marriage, the defendant had completed one year of a three year fellowship in oncology and hematology at New York Hospital. The parties moved from New York City to Stamford in July, 1986 at which time, the defendant was hired as an employee associate by Greenwich Medical Group.
As of January 1, 1989 the defendant was admitted to the group as a full member by the doctors who had comprised the group, (Plaintiff's Exhibits #1 and #2). The defendant's buy-in schedule was spread from his admission date through the end of 1996. As of January, 1995 the defendant had paid $72,000.00 with $34,000.00 remaining on Schedule A (Plaintiff's Exhibit #2). Subsequently, CT Page 4608 two more doctors have been admitted with buy-in agreements. The defendant's buy-in was adjusted accordingly.
Three months after Erica's birth the plaintiff returned to work at an annual salary of $50,000.00 to $60,000.00 in 1987 when she left Saks' employ.
In moving to Stamford, the plaintiff's mother lent $100,000.00 to the parties to enable them to purchase a condominium unit for $299,000.00 with a $199,000.00 mortgage. They repaid $700.00 monthly to the plaintiff's mother. In 1987 or 1988 the parties purchased a home at 123 Surrey Road, Stamford, for $440,000.00. The condo unit was sold, the plaintiff's mother was paid $10,000.00, and the defendant contributed a $10,000.00 legacy received from his late mother.
The plaintiff obtained employment with Vittidini Op. Co. at $80,000.00. She shortly became vice president for the parent company, eventually reaching $130,000.00 yearly salary. In 1992, the plaintiff accepted a position with Carmello Pomodoro at $180,000.00 annual salary. The name owner died and the remaining investor closed the company in December, 1992. The plaintiff returned to Vittidini in September, 1993 at $150,000.00 annual salary where she has remained as an executive. Her financial affidavit lists $8,050 monthly disposable income.
The defendant's financial affidavit filed on January 13, 1995 lists net disposable weekly income of $3,200.00. In addition, the corporation made a contribution of $30,000.00 to the defendant's pension fund in the first quarter of 1994.
The parties' home was sold in August, 1992. From the proceeds, the plaintiff's mother was given $60,000.00. No gain was realized on the sale and neither party owns real estate at the present time.
The marriage was not without its difficulties. The plaintiff claimed the defendant was insensitive to her needs during her pregnancy which was a difficult one. The plaintiff acknowledged that they both were competitive and intensely devoted to their respective careers. The final breakdown began when the defendant met another woman in December, 1991. The plaintiff learned of this liaison in April or May of 1992. This action was commenced by complaint dated June 15, 1992. CT Page 4609
There are several oriental rugs in dispute, five obtained by purchase of the parties, and three by gift from the plaintiff's family. The plaintiff valued them at $20,000.00 on her affidavit. The defendant declined to value them on his affidavit. Neither party expressed any expert knowledge sufficient to value the oriental rugs accurately. The plaintiff has listed $103,000.00 in other assets including a 401k account of $38,000.00. The defendant has listed assets totaling $374,500.00 including his group practice interest at cost of $68,864.00 and his pension plan of $205,000.00. The group underwrites 70% of his auto expense.
The plaintiff has had a mercurial career in the fashion industry. She obviously possesses an ability and talent sufficient to justify her present salary.
The defendant has become well established in his specialty. He generates an income, estimated by Kenneth J. Ayers, C.P.A., an expert witness, to be $112,000 above the median income for his specialty, the median income being $155,000.00. The defendant's earning capacity is found to be double that of the plaintiff's. If past is prologue, the defendant's opportunity to acquire capital assets and for increased income is found to exceed the plaintiff's opportunity for the same.
The plaintiff is presently living in a rented apartment in Manhattan with their child. The parties have an agreement as to custody and visitation which will be incorporated in the judgment as an order. The plaintiff employs a nanny during the week at an average weekly expense of $325.00. The child attends Hewitt School at an annual cost of $15,000.00.
The court found the debt balance due to the plaintiff's mother confusing. Both parties agreed the balance was $48,000.00 at the time the house sold in August 1992. The plaintiff has been paying monthly interest of $880.00 since August 1992, or $10,560 per year. The interest rate appears to exceed 20%.
Having reviewed the evidence in light of the statutory criteria, the court enters the following orders.
1. The parties' agreement as to custody and visitation is adopted as the court's order. It is document #137 in the court's file.
2. The defendant shall pay to the plaintiff, as child CT Page 4610 support, the sum of $3,500.00 each month. The plaintiff shall pay the school tuition and related incidentals and the summer camp expenses incurred for the child.
3. The defendant shall pay to the plaintiff the sum of $1,000.00 each month as periodic alimony, until the remarriage of the plaintiff or the death of either party,[1] non taxable to the plaintiff and not tax deductible by the defendant.
4. The plaintiff is awarded $90,000.00 as her share of the defendant's pension funds to be transferred via a Qualified Domestic Relations Order to be prepared by the defendant's counsel in form acceptable to the pension administrator. The court will execute the documents after approval as to form has been obtained.
5. The defendant shall continue to maintain the $250,000.00 of life insurance insuring his life, naming the child primary beneficiary until she graduates from college or attains 23 years of age.
6. The plaintiff shall retain the assets listed as B., C., D., E., F. and G. on her financial affidavit as well as the articles in storage removed from the former home.
7. The plaintiff shall liquidate the balance of the loan due to her mother.
8. The defendant shall cover the child on his medical insurance. The provisions of C.G.S. § 46b-84(c) apply. The parties shall divide equally any uninsured medical expenses incurred for the care of the child.
9. The defendant shall retain all other of his assets not otherwise assigned, except the defendant shall pay to the plaintiff the sum of $20,000.00 on or before July 1, 1995, as lump sum alimony, not deductible by the defendant nor taxable to the plaintiff.
10. The parties shall be solely responsible for their debts as listed on their respective financial affidavits except as assigned above.
11. The plaintiff may have her family name restored to her, if she wishes. CT Page 4611
The plaintiff's attorney shall draft the judgment file and submit to the defendant's counsel within 30 days of date.
HARRIGAN, J.